IN THE COURT OF APPEALS OF THE STATE OF IDAHO
Docket No. 38117

| STATE OF IDAHO, | ) | 2012 Unpublished Opinion No. 530 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: June 22, 2012 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| TIMOTHY ROBERT DUANE WILKINS, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Lansing L. Haynes, District Judge.

Judgment of conviction and unified sentence of ten years, with five years determinate, for possession of a controlled substance and being a persistent violator, affirmed; judgment of conviction for possession of drug paraphernalia, affirmed.

Sara B. Thomas, State Appellate Public Defender; Spencer J. Hahn, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

GUTIERREZ, Judge

Timothy Robert Duane Wilkins appeals from his judgments of conviction entered upon a jury verdict finding him guilty of possession of a controlled substance and possession of drug paraphernalia and from the district court's finding that he was guilty of being a persistent violator. He also appeals the sentence imposed for the possession of a controlled substance and persistent violator convictions. For the reasons set forth below, we affirm.

## I.

## FACTS AND PROCEDURE

Idaho State Police Corporal Sean Lind pulled over a truck that was the subject of a citizen's reckless driving complaint and had been reported as stolen from a local dealership. Wilkins, alone in the vehicle, immediately got out and began walking towards Corporal Lind,

1

who called for backup. Wilkins had no insurance, no vehicle registration, and his driving privileges were suspended. He was placed under arrest for driving without privileges.

Corporal Lind, assisted by Idaho State Police Trooper Jesse Spike, performed an inventory search of the vehicle. Trooper Spike noticed a methamphetamine pipe, lighter, and two small baggies containing a substance later identified as methamphetamine in an open compartment in the dashboard of the truck, located between the stereo and glove compartment and easily visible from the driver's seat. When informed of the discovery of methamphetamine and paraphernalia, Wilkins became agitated and denied ownership, accusing Corporal Lind of planting the drugs.

Wilkins was charged with possession of methamphetamine, Idaho Code § 37-2732(c)(1); possession of drug paraphernalia, Idaho Code § 37-2734A; possession of a stolen vehicle, Idaho Code § 49-228; driving without privileges, Idaho Code § 18-8001; failure to provide proof of insurance, Idaho Code § 49-1232; and being a persistent violator, Idaho Code § 19-2514, based on two prior felony possession of a controlled substance convictions. He pled guilty to the driving without privileges and failure to provide proof of insurance charges and the district court denied the State's motion to consolidate the possession of a stolen vehicle charge with the drug charges.[1]

At trial, Wilkins' friend, Noah Peterson, testified he had been a passenger in Wilkins' vehicle the day before Wilkins was stopped by Corporal Lind. Peterson claimed he mistakenly left the methamphetamine and pipe in the vehicle and testified Wilkins did not know of their presence. The jury found Wilkins guilty of both possession charges and he waived a jury trial with regard to the persistent violator enhancement. The district court found Wilkins was a persistent violator based on Wilkins' two prior felony convictions and imposed a unified sentence of ten years, with five years determinate, for the possession of methamphetamine charge and being a persistent violator. The district court imposed concurrent sentences of 180 days for the driving without privileges and possession of paraphernalia convictions, and a fine for the insurance infraction. Wilkins now appeals his judgments of conviction for the possession

---

[1]     Accordingly, the possession of a stolen vehicle charge is not at issue in this case.

2

charges and being a persistent violator, as well as his unified sentence of ten years, with five years determinate.[2]

## II.

## ANALYSIS

Wilkins contends the evidence was insufficient to support his convictions for possession of a controlled substance and paraphernalia because there was insufficient evidence establishing he had knowledge and control of the contraband. He also contends the district court erred in "testifying" as to his persistent violator charge that the court recognized Wilkins from previous proceedings and, therefore, Wilkins contends there was insufficient evidence to support his persistent violator conviction. He further asserts the district court abused its discretion by imposing an excessive sentence on the possession of a controlled substance charge with the persistent violator enhancement.

### A. Possession of Methamphetamine and Paraphernalia

Wilkins argues the State failed to present sufficient evidence to establish, beyond a reasonable doubt, that Wilkins possessed a controlled substance and paraphernalia. He specifically contends the State presented insufficient evidence to establish Wilkins knowingly possessed the methamphetamine and pipe and exercised control or dominion over the items.

Appellate review of the sufficiency of the evidence is limited in scope. A finding of guilt will not be overturned on appeal where there is substantial evidence upon which a reasonable trier of fact could have found that the prosecution sustained its burden of proving the essential elements of a crime beyond a reasonable doubt. *State v. Herrera-Brito*, 131 Idaho 383, 385, 957 P.2d 1099, 1101 (Ct. App. 1998); *State v. Knutson*, 121 Idaho 101, 104, 822 P.2d 998, 1001 (Ct. App. 1991). We will not substitute our view for that of the trier of fact as to the credibility of the witnesses, the weight to be given to the testimony, and the reasonable inferences to be drawn from the evidence. *Knutson*, 121 Idaho at 104, 822 P.2d at 1001; *State v. Decker*, 108 Idaho 683, 684, 701 P.2d 303, 304 (Ct. App. 1985). Moreover, we will consider the evidence in the light

---

[2] As Wilkins has already served the entire sentence imposed for the misdemeanor possession of drug paraphernalia conviction, he indicates he does not challenge that sentence on appeal.

most favorable to the prosecution. *Herrera-Brito*, 131 Idaho at 385, 957 P.2d at 1101; *Knutson*, 121 Idaho at 104, 822 P.2d at 1001.

Because the drugs were found in the console and not in Wilkins' actual possession, Idaho law required the State to establish constructive possession--specifically, that Wilkins knew of the drugs and had the power and intention to control them. *State v. Blake*, 133 Idaho 237, 242, 985 P.2d 117, 122 (1999); *State v. Seitter*, 127 Idaho 356, 359, 900 P.2d 1367, 1370 (1995). In other words, constructive possession of a controlled substance exists where a nexus between the accused and the substance is sufficiently proven so as to give rise to the reasonable inference the accused was not simply a bystander, but rather, had the power and intent to exercise dominion and control over the substance. *State v. Rogerson*, 132 Idaho 53, 58, 966 P.2d 53, 58 (Ct. App. 1998); *State v. Rozajewski*, 130 Idaho 644, 647, 945 P.2d 1390, 1393 (Ct. App. 1997). Knowledge of the controlled substance and physical control of the controlled substance must be independently proven beyond a reasonable doubt, by either circumstantial or direct evidence. *Seitter*, 127 Idaho at 360, 900 P.2d at 1371; *Rogerson*, 132 Idaho at 58, 966 P.2d at 58; *Rozajewski*, 130 Idaho at 647, 945 P.2d at 1393.

On appeal, Wilkins contends there was no such nexus, likening this case to *State v. Burnside*, 115 Idaho 882, 771 P.2d 546 (Ct. App. 1989), where this Court addressed whether sufficient evidence existed to support the jury's guilty verdict on a charge of possession of psilocybin mushrooms with the intent to deliver. In *Burnside*, police obtained a warrant to search Burnside's vehicle for evidence of methamphetamine trafficking and approached Burnside while he and a passenger were eating in a restaurant. While searching the car, police discovered psilocybin mushrooms in a black vinyl bag and Burnside was charged with, inter alia, possession of the drugs with the intent to deliver. On appeal, we noted the jury could not infer constructive possession from the mere fact Burnside occupied, with a passenger, the vehicle in which the drugs were seized; rather, the State must have shown Burnside individually was aware the mushrooms were in his car and that he exercised dominion or control over them. *Id*. at 885, 771 P.2d at 549. We concluded the State had not met its burden as to these elements, noting the drugs were found in a bag that Burnside had indicated to the officers when they began their search of the car was not his and at trial, Burnside's passenger had repeatedly declared the drugs were his. Further, there was evidence Burnside may have sold the drugs to the passenger several hours earlier, which suggests they were in the passenger's control. Although Burnside's

4

statement that the bag was not his and evidence of the prior sale indicated Burnside probably had knowledge the drugs were in the car, neither piece of evidence established control. Further, we noted the State failed to rebut the passenger's testimony that he was the sole owner of the drugs. On this basis, we concluded there was insufficient evidence that Burnside exercised dominion or control over the drugs while they were in the vehicle. *Id*. at 885-86, 771 P.2d at 549-50.

Wilkins contends *Burnside* is "almost directly on point with the facts" of this case and argues that like in *Burnside*, he denied ownership of the drugs found in a vehicle driven by him and there was sworn, unrebutted testimony from a passenger, Peterson, that the drugs belonged to Peterson. The only difference, he contends, is that in *Burnside* there was evidence Burnside knew of the presence of the drugs, while in this case there was no evidence Wilkins had knowledge, and additionally, unlike in *Burnside*, there was no evidence Wilkins owned the vehicle in which the drugs were found.

As the State points out, however, *Burnside* is distinguishable. Unlike in *Burnside* where the drugs were found concealed in a bag in a vehicle with the defendant and a passenger, the drugs in this case were found in an open center compartment of the vehicle in which Wilkins was driving alone. In addition, a salient point in our *Burnside* analysis was the fact there was evidence that earlier in the day Burnside sold the drugs to the passenger, which would preclude Burnside from continuing to have control over them; no such evidence was presented here. As the State points out, the unique facts of *Burnside* presented a dichotomy in that case not present in this case: while there was evidence Burnside had knowledge of the drugs, the fact he was not the sole occupant of the vehicle and the evidence he sold them to the passenger earlier in the day, combined with the passenger's unrebutted testimony that the drugs were his alone, indicated that, despite Burnside's knowledge, he did not have control of the drugs. In this case, however, evidence of Wilkins' knowledge is necessarily evidence of his control. We turn to an examination of that evidence.

We conclude there was sufficient evidence from which a jury could reasonably find Wilkins had both knowledge of the presence of the drugs and paraphernalia, as well as the power and intent to exercise dominion and control over the illegal items discovered in the vehicle. First, there is no question Wilkins had sole access to and control over the vehicle at the time the drugs were discovered. Moreover, the State presented evidence that the two baggies, a pipe, and a lighter were found by Trooper Spike in an open dashboard compartment, including testimony

and pictures of the dashboard area of the vehicle, entered as exhibits, establishing the illegal items were within full view of the driver's seat, had a depth of approximately five inches, and was easily accessible by a person sitting in the driver's seat. *See Rogerson*, 132 Idaho at 58-59, 966 P.2d at 58-59 (noting the fact that the drugs and paraphernalia were found in the defendant's garage in plain view support a finding the defendant knew of their existence). From the pictures, it is clear the pipe was in plain view of the driver's seat, a fact reiterated by Corporal Lind's testimony that after being alerted to the compartment by Trooper Spike, he immediately recognized the pipe as a methamphetamine pipe from his vantage point on the driver's side.

Visibility of the baggies and the substance therein from the driver's seat was somewhat less clear. The baggies were found underneath the lighter and pipe and Corporal Lind testified he pulled one of the baggies out before taking the pictures labeled as Plaintiff's exhibits 2 and 3. Wilkins also points out Corporal Lind testified he could not see whether there was anything, let alone methamphetamine, in the baggies until he picked them up and examined them. However, it is clear from the pictures that the fact there were two small baggies underneath the pipe and lighter was discernible from the driver's seat, and we conclude a jury could reasonably find Wilkins could see them from the driver's seat and could easily reach them. *See also State v. Gomez*, 126 Idaho 700, 707, 889 P.2d 729, 736 (Ct. App. 1994) (noting that although the drugs were not found on Gomez's person, they were found in a place "readily accessible" to him). Furthermore, the fact the pipe was clearly in plain view is circumstantial evidence that may be used to find the requisite knowledge of the presence of drugs--in this case, the methamphetamine. *State v. Groce*, 133 Idaho 144, 152, 983 P.2d 217, 225 (Ct. App. 1999).

In addition, Wilkins exhibited suspicious behavior upon being stopped. Suspicious behavior of a defendant when he becomes aware of the police is a circumstance that can link him to drugs found on the premises of which he is in non-exclusive possession. *Gomez*, 126 Idaho at 707, 889 P.2d at 736. Here, Corporal Lind testified when Wilkins was pulled over, Wilkins immediately left the truck and began walking toward Corporal Lind, apparently in an attempt to initiate contact with the officer in the officer's patrol vehicle as opposed to in the truck. Both officers described Wilkins' demeanor as "fidgety," "wound up," and "jumpy," and Corporal Lind testified Wilkin's overall demeanor was concerning enough for him to request backup, something Trooper Spike testified Corporal Lind did not generally request and which was not routine procedure of the Idaho State Police. Furthermore, after Wilkins was informed the

6

methamphetamine and pipe were found in his vehicle, he became "unglued," acting like a "caged animal." *See also State v. Betancourt*, 151 Idaho 635, 639, 262 P.3d 278, 282 (Ct. App. 2011) (noting, in finding sufficient evidence to infer constructive possession of drugs found in a vehicle, that the defendant appeared nervous in his interaction with the officer).

Finally, although Wilkins places great emphasis on Peterson's "unrebutted" testimony that Peterson was the sole owner of the methamphetamine and paraphernalia, it is well-settled that it is the province of the jury to assess credibility. *State v. Jones*, 145 Idaho 639, 641, 181 P.3d 1247, 1249 (Ct. App. 2008). As the State points out, several issues affecting Peterson's credibility were revealed at trial, including that Peterson had been friends with Wilkins for several years and Peterson had recently made a very similar claim of ownership of methamphetamine found in another criminal defendant's vehicle. In addition, while Peterson claimed he smoked the methamphetamine in the truck while Wilkins was inside his residence so he would not "tempt" Wilkins, he then made little to no attempt to conceal the remaining methamphetamine when Wilkins returned to the vehicle. In short, the mere fact Peterson testified the drugs were his is not dispositive. This consideration was evident in *Blake*, 133 Idaho at 239, 985 P.2d at 119, where the Supreme Court addressed Blake's argument that the State failed to present evidence he was in constructive possession of methamphetamine found in a vehicle in which he was merely a passenger. The Court ultimately concluded sufficient evidence had been presented to find constructive possession, despite the driver's testimony at trial that all of the items in the car belonged to him. *Id*. at 242, 985 P.2d at 122. *See also Rozajewski,* 130 Idaho at 647, 945 P.2d at 1393 (holding that where, after drugs were found in the glove compartment and the defendant argued at trial they were not his and other people had access to his vehicle, the jury could disregard the defendant's testimony because his credibility was called into question); *Gomez*, 126 Idaho at 706, 889 P.2d at 735 (noting that given the evidence presented, in determining evidence of constructive possession, the jury could reasonably disbelieve Gomez's story that he had fled from police for a benign reason rather than to conceal drugs). Based on the record, we conclude the evidence, though conflicting in nature, was sufficient for the jury to find Wilkins knew of and exercised control over the methamphetamine and paraphernalia. *See Rozajewski*, 130 Idaho at 647, 945 P.2d at 1393.

7

## B.    Persistent Violator

Wilkins also contends there was insufficient evidence to support his conviction for being a persistent violator because the district court erred by relying on its own memory of having dealt with Wilkins in previous criminal proceedings to find Wilkins was the individual identified in the two prior judgments of conviction entered as evidence to prove Wilkins had two prior felony convictions. Excluding this improper "testimony" by the district court, Wilkins contends there was insufficient evidence to establish his identity as the person previously convicted of two felonies.

The former convictions relied upon to invoke the persistent violator enhancement must be alleged in the indictment or information and proved at trial. *State v. Lawyer*, 150 Idaho 170, 173, 244 P.3d 1256, 1259 (Ct. App. 2010); *State v. Medrain*, 143 Idaho 329, 332, 144 P.3d 34, 37 (Ct. App. 2006). Thus, the State is required to establish the identity of the defendant as the person formerly convicted beyond a reasonable doubt. *Lawyer*, 150 Idaho at 173, 244 P.3d at 1259; *Medrain*, 143 Idaho at 332, 144 P.3d at 37. Where a defendant is not sufficiently identified as the same individual who was previously convicted, the judgment of conviction finding him or her to be a persistent violator must be vacated. *Lawyer*, 150 Idaho at 173, 244 P.3d at 1259.

Wilkins points to the following statement by the district court at the trial on the persistent violator charge as indication the district court relied on improper evidence to find Wilkins was the same person as the subject of the two prior convictions:

> And the Court . . . has an independent memory of Mr. Wilkins as having been before the Court before. Without looking at these judgments, I could not have said what he has been convicted of, whether it was a felony or a misdemeanor, without reviewing the documents. But I do recognize Mr. Wilkins. And when I look at these particular judgments I do recognize Timothy Robert Duane Wilkins of these judgments to be the Mr. Wilkins that is the Defendant in this particular case.

Wilkins contends that by indicating it had "independent memory" of Wilkins having previously been before the court and that, by looking at the judgments for the two prior convictions, the court recognized the name in those judgments to be the person in this case, the district court improperly relied on its memory of Wilkins to establish his identity and ran afoul of Idaho Rule of Evidence 605, which states a judge presiding at a trial may not testify in that trial as a witness. The State concedes that in acting as a fact-finder in a persistent violator enhancement trial, a

8

court may not rely on its own personal knowledge of a defendant's prior felony convictions, but contends the court did not do so in this case. We need not address this issue, however, because even assuming the district court erred in this regard, there was sufficient evidence presented, apart from the district court's recollections, to establish beyond a reasonable doubt Wilkins' identity as the person in the two prior felony convictions. *See State v. Pullin*, 152 Idaho 82, 87, 266 P.3d 1187, 1192 (Ct. App. 2011) (holding where a ruling in a criminal case is correct, though based upon an incorrect reason, it still may be sustained upon the proper legal theory).

In *Lawyer*, 150 Idaho 170, 244 P.3d 1256, this Court considered the requisite proof to identify a defendant as the same individual identified in a prior conviction. There, Lawyer was charged with driving under the influence, as well as a felony DUI enhancement on the allegation he had previously been convicted of felony DUI within the preceding fifteen years. The evidence presented by the State to prove the enhancement was a certified copy of a 2011 judgment of conviction with an attached criminal complaint, both bearing the name "Daniel J. Lawyer" and an accompanying birth date. The arresting officer testified this identifying data matched the data on the driver's license Lawyer presented to him after he was pulled over in the current case. The State also relied on the fact the current incident and the prior conviction occurred in the same county. Lawyer argued on appeal this evidence was insufficient for a reasonable jury to find the State had proven beyond a reasonable doubt he was the same person as identified in the previous judgment of conviction. *Id*. at 173, 244 P.3d at 1259. On appeal, we noted the evidence presented involved both personal and nonpersonal evidence of identity, with the former being the corresponding names and birthdates and the latter being that they were the same crime committed in the same county. Noting other states have found this combination of evidence to suffice, we concluded there was sufficient evidence to establish identity beyond a reasonable doubt. *Id*. at 174, 244 P.3d at 1260.

The facts of the instant case are very similar. The State introduced two judgments for two prior felony convictions, one for possession of a controlled substance with the intent to deliver and one for possession of a controlled substance, to-wit methamphetamine. Both judgments contained the same name as the defendant charged in the present case, "Timothy Robert Duane Wilkins," and both judgments listed the date of birth as May 7, 1973, which Corporal Lind testified was the same birthdate Wilkins gave to him at the scene of the stop in this case. Further, both prior convictions occurred in the same county as the instant case,

Kootenai County, and the prior crimes were similar to the charge in this case in that they all involved possession of a controlled substance, one specifically noting the substance was methamphetamine as in this case.

Wilkins argues on appeal that *Lawyer* is distinguishable because in that case the previous conviction was for the "same offense," *Id*. at 174, 244 P.3d at 1260, while in this case, only one of the prior convictions in the case was for the exact "same offense." We are not persuaded this discrepancy renders the evidence insufficient in this case. *Lawyer* did not dictate the offense must be exactly the same, but merely listed this as a factor in matching the identity of the defendant to the subject of the prior conviction. Commonsense dictates that the prior conviction for possession of a controlled substance with the intent to deliver is very similar to the conviction in this case, as both involve the possession of a controlled substance, and is relevant to the requisite inquiry. This factor, in combination with the matching name,[3] birthdate, county, and one identical prior offense--comprising both personal and nonpersonal evidence of identity as in *Lawyer*--is sufficient evidence to support Wilkins' conviction for being a persistent violator. Accordingly, we uphold the district court's finding that Wilkins was the same person as the subjects of the two prior convictions on the basis of the personal and nonpersonal matching identifying characteristics.

## C.     Sentence Review

Wilkins asserts that, given any view of the facts, his unified sentence of ten years, with five years determinate, for possession of a controlled substance is excessive. An appellate review of a sentence is based on an abuse of discretion standard. *State v. Burdett*, 134 Idaho 271, 276, 1 P.3d 299, 304 (Ct. App. 2000). Where a sentence is not illegal, the appellant has the burden to show it is unreasonable and, thus, a clear abuse of discretion. *State v. Brown,* 121 Idaho 385, 393, 825 P.2d 482, 490 (1992). A sentence may represent such an abuse of discretion if it is shown to be unreasonable upon the facts of the case. *State v. Nice*, 103 Idaho 89, 90, 645 P.2d 323, 324 (1982). A sentence of confinement is reasonable if it appears at the time of

---

[3]     We also note the exact match of the name that included four separate names, "Timothy Robert Duane Wilkins," increased the evidence matching Wilkins' identity to the subject of the prior convictions. *Hefferman v. United States*, 50 F.2d 554, 557 (3d. Cir. 1931) (holding that evidence of the same unusual name with the same address in the same city for the same offense of selling liquor in the same judicial district was sufficient to establish identity) (*cited in State v. Lawyer*, 150 Idaho 170, 174, 244 P.3d 1256, 1260 (Ct. App. 2010)).

sentencing that confinement is necessary "to accomplish the primary objective of protecting society and to achieve any or all of the related goals of deterrence, rehabilitation or retribution applicable to a given case." *State v. Toohill*, 103 Idaho 565, 568, 650 P.2d 707, 710 (Ct. App. 1982). Where an appellant contends the sentencing court imposed an excessively harsh sentence, we conduct an independent review of the record, having regard for the nature of the offense, the character of the offender, and the protection of the public interest. *State v. Reinke*, 103 Idaho 771, 772, 653 P.2d 1183, 1184 (Ct. App. 1982). When reviewing the length of a sentence, we consider the defendant's entire sentence. *State v. Oliver*, 144 Idaho 722, 726, 170 P.3d 387, 391 (2007).

On appeal, Wilkins points to several mitigating circumstances present at sentencing--specifically, his difficult childhood, the support of his family in his rehabilitation efforts, and his recognition that he has a drug problem and willingness to participate in a treatment program. He contends these factors, combined with the "weakness" of the State's case against him, rendered the sentence imposed excessive.

Before pronouncing the sentence, the district court discussed the appropriate factors relevant to its decision. The court also indicated it reviewed Wilkins' neuropsychological evaluation and presentence investigation report, that included Wilkins' description of his difficult childhood and gave Wilkins the opportunity to make any corrections to the presentence investigation report, which Wilkins took. The court stated it reviewed several letters Wilkins wrote to the court, in which Wilkins expressed his dissatisfaction with his defense counsel and his anger at the prosecutor in this case, as well as several letters written by others in support of Wilkins. The court specifically noted the supportive testimony of Wilkins' brother at the sentencing hearing, telling Wilkins, "your brother's description of you seems accurate. You seem like a nice guy."

However, the court also noted that at the time of the present offense, Wilkins was already on probation for the two prior felony methamphetamine convictions, one of which was a delivery conviction, and had an extensive criminal history amounting to approximately forty-five prior convictions, including convictions for burglary, obstruct and delay, possession of drug paraphernalia, petit theft, providing false information, driving a vehicle without the owner's permission, telephone harassment, misdemeanor eluding, battery, misdemeanor possession of a controlled substance, failure to stop at an accident, and reckless driving. In this sense, the district

11

court surmised that Wilkins "just can't stop committing these law violations," which put the community at risk, diminished society's value, and hurt "everyone around" him, as well as the victims involved.

The court noted that as to Wilkins' first felony methamphetamine conviction, the court sentenced Wilkins to a rider and then placed him on probation, in opposition of the recommendation of prison authorities. However, within six months of being placed on probation, Wilkins violated probation "in a pretty significant way" by being found in possession of methamphetamine with the intent to deliver. As to Wilkins' second felony possession conviction, the recommendation was again to send Wilkins to the penitentiary without retaining jurisdiction; however, the court placed him on a rider and then on probation. Several months later, Wilkins violated probation, but the court gave him another chance, declining to revoke probation. Wilkins again violated probation by his arrest in the present incident.

After the consideration of these facts, in conjunction with an application of the objectives of criminal punishment, the district court ultimately determined a unified sentence of ten years, with five years determinate, was appropriate. Quite simply, Wilkins had been given numerous chances to reform his life, several by this particular district court, yet failed to do so and continued to act in a manner placing the community at risk. Given the district court's thorough examination of the relevant facts and clear recognition of the appropriate sentencing considerations, as well as Wilkins' extensive criminal history and demonstrated inability to conform his actions to the law, we conclude the sentence imposed was not an abuse of discretion under any reasonable view of the facts.

### III.
### CONCLUSION

There was sufficient evidence for a reasonable jury to find Wilkins was in constructive possession of the methamphetamine and paraphernalia and, thus, to uphold Wilkins' convictions of the possession charges. There was also sufficient evidence presented to the district court to establish Wilkins' identity as to the persistent violator enhancement. Finally, we conclude the district court did not abuse its discretion in imposing sentence where Wilkins had an extensive criminal history and had demonstrated a complete inability to conform his conduct to the law. Wilkins' judgment of conviction for possession of methamphetamine and being a persistent

violator and sentence of ten years, with five years determinate, as well as his judgment of conviction for possession of drug paraphernalia, are affirmed.

Chief Judge GRATTON and Judge MELANSON **CONCUR.**